In the Matter of ARTHUR V. GREENIDGE, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, May 8, 1973.

*John G. Bonomi* of counsel (*Ronald Eisenman* with him on the brief), for petitioner.

*Henry R. Williams* for respondent.

*Per Curiam.* Respondent was admitted to the Bar in the Second Department in 1952. The petitioner, Association of the Bar of the City of New York, through its Grievance Committee has initiated this proceeding for disciplinary action. The petition is based on four charges. The first relates to the conversion of funds entrusted to respondent for the purpose of procuring a settlement of a foreclosure action; the second and third relate to the failure of respondent to prosecute two personal injury actions in which he was retained by the respective plaintiffs; and the fourth concerns the issuance of 11 checks on which payment was refused by respondent's bank for insufficient funds.

The Referee, Lawrence K. Feitell, Esq., found that the first and second charges were sustained, the third partially sustained, and the fourth was not sustained. We agree with each of these findings.

As regards the fourth charge, no payee of the checks complained and the uncontested proof is that each check was shortly made good. Respondent further testified without contradiction that the checks were drawn against deposits which he was unaware had not been collected by his bank at the time.

The third charge was the failure to prosecute a negligence action. The Referee found that respondent only agreed to try to get a settlement and that he did try but failed. The only finding of any wrongdoing arose when the client obtained a new attorney. Respondent, though requested, refused to give the attorney any account of what he had done.

In the action on which the second charge is based it is undisputed that respondent served a summons but did nothing further. The Referee found on substantial evidence that he misrepresented the status of the action and failed to co-operate in any way with an attorney who was subsequently substituted for him.

The first charge arose out of the sale of a piece of real property. The property was encumbered by three mortgages and the sale was subject to the first two. The third was in process of foreclosure, and respondent's client, the seller, was obligated to discharge this mortgage. Respondent advised the parties

that there was a possible defense of usury and that he believed he could settle the mortgagee's claim for $10,000. On this representation the buyer was induced to advance $10,000 of the purchase price to respondent in the form of two checks, one for $8,000 and one for $2,000. Respondent deposited the former in his special account and the latter in his personal account. He was unable to effect a settlement. He drew against his special account to the point where the balance in that account was $4,500.

Without going into further detail, the third mortgage was neither discharged nor satisfied in part by respondent. He did not produce the $10,000 or any part of it at the closing. He later did pay the brokerage fee and certain adjustments on insurance policies. Several days afterwards, following a complaint by the client to the Bar Association, he paid the balance to his client, after deducting $2,500 for his fee. On these facts the Referee's finding of a conversion is absolute.

It appears that respondent is inexcusably lax in his handling of his clients' money and affairs. Though he has not been shown to be of venal character or wrongly motivated, and his difficulties have not caused irrevocable harm, his departures from ethical conduct cannot be condoned. We believe that suspension for a period of six months will provide both a fitting sanction and an adequate warning to respondent to conform to stricter standards.

Respondent should be suspended from practice for a period of six months.

STEVENS, P. J., McGIVERN, MARKEWICH, NUNEZ and STEUER, JJ., concur.

Respondent suspended from practice as an attorney and counselor at law in the State of New York for a period of six months, effective June 8, 1973.